UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

NEIL SCALA,
    Plaintiff,

v.                                  C.A. NO: 302cv:00755(MRK)

AMERICAN AIRLINES, INC.,
    Defendant.

## EXHIBITS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Exhibit 1 | Complaint |
| Exhibit 2 | Deposition Excerpts of Neil Scala |
| Exhibit 3 | Deposition Excerpts of Patricia Scala |
| Exhibit 4 | Cardiac Catheterization and Discharge Summary 12/21/00 |
| Exhibit 5 | Cardiac Procedure Report 1/18/01 |
| Exhibit 6 | Mid-State Medical Record of 8/31/01 |
| Exhibit 7 | Exercise Test Report 9/13/85 |
| Exhibit 8 | Medical Record and Office Note of 10/10/86 and 9/30/86 |
| Exhibit 9 | Office Note of 11/27/89 |
| Exhibit 10 | Cardiac Catheterization Report 1/5/90 and Office Note of 2/6/90 |
| Exhibit 11 | Office Note 3/19/90 |
| Exhibit 12 | Office Note 7/22/91 and 8/5/91 Stress Test Report |
| Exhibit 13 | Office Notes 10/14/92 and 4/7/93 |
| Exhibit 14 | Operative Report 5/3/93 |
| Exhibit 15 | Office Note 1/18/95 |
| Exhibit 16 | Office Note 4/5/95 and Stress Test Report 4/12/95 |

912487v1

| | |
|---|---|
| Exhibit 17 | Office Note 5/15/95 |
| Exhibit 18 | Operative Report 6/5/95 |
| Exhibit 19 | Office Note 7/14/95 |
| Exhibit 20 | Office Notes 8/6/97, 9/8/97; 10/10/97; 11/7/97; Echocardiogram Report 10/1/97; Stress Test Report 10/9/97; and Report of Operation 10/21/97 |
| Exhibit 21 | Office Note 3/10/99 and Stress/Echo Report 4/28/99 |
| Exhibit 22 | Office Notes 6/21/99, 8/2/99; and 10/1/99 |
| Exhibit 23 | History and Physical and Discharge Report 6/30/99 |
| Exhibit 24 | Office Notes 8/9/00; 9/6/00; and 10/6/00 and Mid-State Medical Discharge and History and Physical |
| Exhibit 25 | Cardiac Catheterization and Discharge Report 8/12/00 |
| Exhibit 26 | Cardiac Catheterization Discharge Report 5/23/02 and Office Notes 8/12/00 |
| Exhibit 27 | Office Note 8/27/02 |
| Exhibit 28 | American's Expert Report and Designation |
| Exhibit 29 | Scheduling Order |
| Exhibit 30 | Memorandum and Order, Sousa v. SATA Air Acores, C.A. No. 01-10103-RCL (D. Mass. 2002) |
| Exhibit 31 | Mid-State Medical record of 1/5/01 |

# EXHIBIT 1

RETURN DATE: MAY 14, 2002

| | | |
|---|---|---|
| NEIL SCALA | ) | SUPERIOR COURT |
| | ) | |
| | ) | JUDICIAL DISTRICT OF |
| v. | ) | NEW HAVEN AT MERIDEN |
| | ) | |
| AMERICAN AIRLINES, INC. | ) | MARCH 27, 2002 |

## COMPLAINT

1. The defendant American Airlines, Inc. is a foreign corporation licensed to do business in the State of Connecticut and engaged in the airline transportation business with a principal place of business at 4333 Amon Carter Boulevard in Fort Worth, Texas.

2. Prior to December 15, 2000, through the stream of interstate commerce, the defendant American Airlines, Inc. distributed and/or sold airline tickets to the plaintiff, Neil Scala, and his wife for their trip to Aruba.

3. On or about December 15, 2000, the plaintiff and his wife were passengers on the defendant's flight from Aruba to San Juan, Puerto Rico (Flight No. 1566).

4. During said flight, the defendant's flight attendants were serving beverages to the passengers and the plaintiff had requested cranberry juice.

5. The plaintiff immediately consumed the beverage he was given by the defendant's flight attendant, believing it was cranberry juice.

6. Unbeknownst to the plaintiff, said beverage contained alcohol and, as a result of its ingestion, the plaintiff was caused to suffer the serious injuries and losses hereinafter set forth.

7. At all times mentioned herein, the defendant's flight attendants were the agents, servants and/or employees of the defendant acting within the scope of their employment.

8. Said injuries and losses were due to the carelessness and/or negligence of the defendant, its agents, servants and/or employees, in one or more of the following ways:

    (a) in that they served alcohol to the plaintiff after he had requested a non-alcoholic beverage;

    (b) in that they mixed up the plaintiff's beverage order with another passenger who had requested alcohol;

2.

    (c) in that they failed to warn or inform the plaintiff that the beverage they served him contained alcohol when in the exercise of reasonable care they knew or should have known to do so;

    (d) in that they failed to have appropriate procedures and/or safeguards in place to ensure that passengers who requested non-alcoholic beverages were not served alcohol; and

    (e) in that they failed to have sufficient and properly trained crew and flight attendants to safely and correctly dispense beverages to the passengers.

9.    As a result of said incident, the plaintiff was caused to develop atrial fibrillation which triggered tachycaria and an anginal attack, damaging his heart; pain and anguish and a shock to the plaintiff's entire nervous system, some of which injuries are or are likely to be of a permanent nature.

10.    As a further result of the incident, the plaintiff was forced to incur financial obligations for hospital and medical care, medicines and x-rays, and will be forced to

expend further sums for the same in the future.

                          THE PLAINTIFF
                          BY BUCKLEY & WYNNE

By _____
    John F. Wynne, Jr.
    685 State Street
    New Haven, CT  06511
    (203) 776-2278
    -- His Attorneys --

4.

RETURN DATE: MAY 14, 2002

| | | |
|---|---|---|
| NEIL SCALA | ) | SUPERIOR COURT |
| | ) | |
| | ) | JUDICIAL DISTRICT OF |
| v. | ) | NEW HAVEN AT MERIDEN |
| | ) | |
| AMERICAN AIRLINES, INC. | ) | MARCH 27, 2002 |

## DEMAND FOR RELIEF

WHEREFORE, the plaintiff claims:

1. Compensatory money damages;

2. Any relief in law or equity that doth pertain.

The amount, legal interest or property in demand is greater than Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

> THE PLAINTIFF
> BY BUCKLEY & WYNNE
>
> By _____
> John F. Wynne, Jr.
> 685 State Street
> New Haven, CT 06511
> (203) 776-2278
> -- His Attorneys --

5.

Scala, Neil

MAY 07 2001   WGT. 278 clothed   HT. _____   B.P. _____   age 66

Pulse: ↑4lbs·   12²/80   50 reg.

Neil is here for management of his ischemic heart disease and paroxysmal atrial fibrillation. Of interest is a long odyssey with his paroxysmal atrial fibrillation was triggered when he was on an airline and asked for a drink of cranberry juice. Apparently, he was given the cranberry juice but with two jiggers of vodka in it. This resulted in him turning beet red and then developing a rapid, irregular heart rate. It appears that the alcohol triggered the development of atrial fibrillation. This when onto a tachycardia, which triggered an anginal attack and a long sequence from that point on culminating eventual conversion to sinus rhythm with a Holter in January revealing that he was back in stable sinus rhythm and has been taken off of his Coumadin. He has had no chest pain, no shortness of breath. He is now age 66. He plays tennis three times a week. He has developed diabetes. His last sugar was 162, glycated hemoglobin 8.6. He was started on Avandia 4 mg a day.

PHYSICAL EXAMINATION: Today, his skin was warm and dry. His lungs were clear. There were no rales or rhonchi. The cardiac exam revealed a regular rhythm. The rate was 50. There was no murmur, rub, or gallop. The blood pressure was 122/80 in the right arm in the seated position. Weight is up four pounds.

I spent time discussing with Neil the importance of weight reduction not only for managing his diabetes but also his lipids and ischemic heart disease. He will need fasting lipids and liver function tests, and a basic metabolic profile. Currently, his medications will consist of the following:

MEDICATIONS:   Ecotrin 325 mg q.d.
               Baycol .4 mg b.i.d.
               Vitamin E 400 IU q.d.
               HCTZ 25 mg q.d.
               Lanoxin .25 mg q.d.
               Metoprolol 50 mg b.i.d.
               Avandia 4 mg q.d.
               Gingko biloba per patient

Cardiovascular reevaluation will be in four month's time.

JSZ:gf
T: 05/08/01

# EXHIBIT 2

ORIGINAL

1

```
 1          UNITED STATES DISTRICT COURT
              DISTRICT OF CONNECTICUT
 2
 3   NEIL SCALA              CIVIL ACTION NO.
 4                           302cv:00755(MRK)
 5       VS.
 6
     AMERICAN AIRLINES, INC.  OCTOBER 23, 2003
 7
 8
 9           DEPOSITION OF:  NEIL SCALA
10
11   APPEARANCES:
12
13     BUCKLEY & WYNNE
          685 State Street
14        New Haven, Connecticut 06510
          (203) 776-2278
15     BY: JOHN F. WYNNE, JR., ESQUIRE
16
17     MORRISON, MAHONEY & MILLER
          250 Summer Street
18        Boston, Massachusetts 02210-1181
          (617) 439-7500
19     BY: TORY A. WEIGAND, ESQUIRE
20
21              Wendy J. Leard
            Registered Merit Reporter
22                CSR # 00039
            EPPLEY COURT REPORTING
23              P.O. Box 382
          Hopedale, Massachusetts 01747
24              (508) 478-9795
25
```

```
 1   own?
 2       A    Yes.
 3       Q    And where were you prior to that?
 4       A    I was on 367 Brownstone Ridge, Meriden,
 5   Connecticut.
 6       Q    Was that also a home?
 7       A    Yes.
 8       Q    How long did you live there?
 9       A    Thirty years.
10       Q    And what is your date of birth?
11       A    2-23-35.
12       Q    Okay.  And what's your social security
13   number?
14       A    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.
15       Q    What was the date -- you're married; is
16   that correct?
17       A    Correct.
18       Q    When were you married?  Or how long have
19   you been married?  I'll make it easier.
20       A    Fifty years.
21       Q    And do you have any children?
22       A    Yes, I do.  I have five and one is
23   deceased.
24       Q    And roughly, what are their ages?
25       A    My daughter, let's see, is 49; my son is
```

```
 1   I was in my thirties or something.
 2       Q    But before retiring at 48, you had not
 3   performed any work as a building inspector; is
 4   that correct?
 5       A    No.
 6       Q    Okay.
 7       A    I really did.  I went in -- I filled in
 8   for a building official in the town of Berlin
 9   while he was sick.
10       Q    Okay.
11       A    In the winter months.
12       Q    When you turned 48, was that 1983?
13       A    Well, I'm 68 now, so it's 20 years ago.
14   So you're looking -- I used to be able to do math
15   in my head so quick.
16       Q    I think you had the bypass surgery in
17   1983?
18       A    Yeah.
19       Q    That would be the year you retired?
20       A    Yeah, that was the year.  '83 and '84 I
21   quit.
22       Q    Okay.  And then at that point, did you
23   become a full-time state building inspector?
24       A    No.  I was a part-time one.  I didn't want
25   a full-time job.
```

Neil Scala
October 23, 2003

13

```
 1      Q     Every three or four months?
 2      A     Something like that, yeah.
 3      Q     And when was the last time you saw
 4   Dr. Anderson?
 5      A     I'd say maybe a month and a half, two
 6   months ago.
 7      Q     Was there any particular issues at that
 8   last visit with Dr. Anderson?
 9      A     She just, you know -- because I'm on all
10   these medications, they keep checking my blood and
11   my liver, make sure the medications don't mess me
12   up.
13      Q     Were there any concerns that she raised
14   with you at that time?
15      A     No.  In fact --
16      Q     Everything was fine?
17      A     -- I had a terrific bill of health from
18   her.
19      Q     When is the last time you saw Dr. Zesk?
20      A     Hmm.  Probably about four months ago.
21      Q     Was there any particular issues or
22   concerns he had with you at that time?
23      A     None.  He was amazed at the progress that
24   I've made.  The one time he praised me instead of
25   yelling at me.
```

```
 1     Q    All right.  The incident that is the
 2  subject of your complaint against American took
 3  place in December of 2000?  Does that sound right?
 4     A    Correct.
 5     Q    And just so we're clear, you were retired
 6  at that time; you weren't working.
 7     A    No.
 8     Q    And so we're clear, you're not making a
 9  claim for lost wages or income as a result of
10  that.
11     A    No.
12     Q    Now, this was a trip to Aruba?
13     A    Correct.
14     Q    And was it just you and your wife?
15     A    Correct.
16     Q    Okay.  Who made the plans or reservations
17  for that trip?
18     A    My wife is our social director.
19     Q    So she would have talked to any agency or
20  airlines --
21     A    Right.
22     Q    -- to arrange for that?
23          Now, had you been to Aruba before?
24     A    Since 1987, we've been going every single
25  year.
```